R. W. SMITH AND JOHN D. WINCHESTER A/C DOHERTY PETROLEUM CO., INC. *v.* UNITED STATES (No. 5083)*

United States Court of Customs and Patent Appeals, August 2, 1962

*Stein and Shostak* (*Marjorie M. Shostak* and *S. Richard Shostak*, of counsel) for appellants.

*William H. Orrick, Jr.*, Assistant Attorney General, *Richard E. FitzGibbon*, Chief, Customs Section (*Richard H. Welsh*, trial attorney, of counsel) for the United States.

[Oral argument April 5, 1962, by Miss Shostak and Mr. Welsh]

Before WORLEY, Chief Judge, and RICH, MARTIN, and SMITH, Associate Judges, and Judge WILLIAM H. KIRKPATRICK.[1]

WORLEY, Chief Judge, delivered the opinion of the court:

*C.A.D. 806.
[1] United States Senior District Judge for the Eastern District of Pennsylvania, designated to participate *in place of Judge O'Connell,* pursuant to provisions of Section 294(d), Title 28, United States Code.

Involved here are three importations invoiced as "Steel Cotton Ties Partly Manufactured" which were consolidated for trial.

■ The merchandise was classified as "Steel in strips not thicker than ¼″ and not exceeding 16″ in width," under Paragraph 316(a) of the Tariff Act of 1930, as modified by the Sixth Protocol of Supplementary Concessions to the General Agreement on Tariffs and Trade, 91 Treas. Dec. 150, T.D. 54108, which reads:

All flat wires and all steel in strips not thicker than ¼ inch and not exceeding 16 inches in width, whether in long or short lengths, in coils or otherwise, and whether rolled or drawn through dies or rolls, or otherwise produced:
Not thicker than 0.01 inch_____ thicker than 0.01 inch but not thicker than 0.05 inch_____ 9½% ad val.

The importers protested, claiming the merchandise properly dutiable under Paragraph 314, as modified by the Torquay Protocol to the General Agreement on Tariffs and Trade, 86 Treas. Dec. 121, T.D. 52739, specifically urging applicability of the language "* * * or partly manufactured into * * * ties * * * " contained in Paragraph 314 which reads:

Hoop or band iron, and hoop or band steel, cut to lengths, *or wholly or partly manufactured into* hoops or *ties*, coated or not coated with paint or any other preparation, with or without buckles or fastenings, *for baling cotton* or any other commodity_____ 0.1¢ per lb. (Emphasis supplied.)

The Customs Court sustained the collector's classification. The importers appeal from that judgment.

Two witnesses for the importers established facts which are not disputed. It appears that appellants generally import cotton ties in lengths of 11½ feet, the standard for cotton baling ties. In this instance, however, mechanical difficulties in the manufacturing plant in England caused them to import the commodity in coils rather than the standard lengths. The material was manufactured in accordance with appellants' specifications for standard cotton baling ties, having the same chemical and physical qualities, including width and gauge, as normal cotton tie steel. After importation, the coils were cut to the desired lengths and used in baling cotton.

In disposing of appellants' protest, the Customs Court said:

Paragraph 314 provides, among other things, for band steel, cut to lengths, or wholly or partly manufactured into ties for baling cotton or any other commodity. *If the commodity had been imported "cut to lengths," it would have met the precise terms of paragraph 314.* Plaintiffs contend that, since the operation of cutting the coils of band steel into lengths of 11½ feet prepares them for use as ties for baling cotton, it logically follows that, in its imported condition, the band steel was partly manufactured into ties for baling cotton and that, unless plaintiffs' interpretation be adopted, "* * * there could be no article of commerce to which the language 'band steel, * * * partly manufactured into * * * ties, * * * for baling cotton' could properly relate * * *," thereby leaving the quoted language inoperative and meaningless.

While we cannot, upon the facts now before us, definitely foresee the possible application of the words "* * * wholly or partly manufactured into * * * ties * * *," and it would be idle for us to speculate upon it—we are clearly of the opinion that the subject merchandise is not comprehended by the quoted language. (Emphasis supplied.)

The court then agreed with the Government's contention that the decisions in *United States* v. *The Harding Co.*, 21 CCPA 307, T.D. 46830, and *The Harding Co. et al.* v. *United States*, 23 CCPA 250, T.D. 48109, controlled the instant controversy.

Both *Harding* cases involved a product consisting principally of asbestos yarn and wire woven together and imported in 100 foot lengths. It was intended for use, when cut to the desired lengths and holes drilled therein, as brake linings for automobiles and was held classifiable as manufactures of asbestos yarn rather than as parts of automobiles, finished or unfinished, as claimed by the importer.

In the second *Harding* case the record established that the product was used only in the manufacture of brake linings for automobiles. In holding the product classifiable as manufactures of asbestos yarn rather than as parts of automobiles, the court said:

As long as the merchandise is not cut before importation or is not marked when imported so that nothing remains to be done to make it an automobile brake lining except to cut it into pieces of predetermined length, we regard it as wholly immaterial that the cutting of the roll is delayed until it is fixed to and riveted upon the brake shoe. In the condition as imported, the long roll of brake-lining material has in no manner been dedicated to the making of any particular brake lining. To be a part of an automobile, that is a brake lining, it must be more than mere material for making a brake lining.

While we appreciate the relevance of that language, we are unable to agree with the Government that the facts and issues in *Harding* are sufficiently in point to control the instant issues. As pointed out by appellants, *Harding* was concerned with wholly different merchandise entered under another section of the Tariff Act and dealt with the question whether that importation was part of an automobile.

To repeat, the Customs Court was of the opinion that if the instant merchandise had been "cut to lengths" it would meet the precise terms of Paragraph 314. We are in full agreement on that score, but we are also in agreement with the importers that, on the facts here, the language "or wholly or partly manufactured into hoops or ties * * * for baling cotton" makes the instant merchandise eligible for classification under Paragraph 314, and it should have been so classified.

Inasmuch as *Biddle Purchasing Co.* v. *United States*, 60 Treas. Dec. 763, T.D. 45239, *inter alia*, involved different merchandise, we do not think it can properly be cited as evidence of Congressional ratification of judicial interpretation as to control the issues here.

On this record we think the importers have satisfactorily shown that the merchandise comes within the provisions of Paragraph 314 rather than the collector's classification. Under such circumstances we are obliged to *reverse* the judgment appealed from.